UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00447-RJC

| TANISHA PORTWINE, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| | ) **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 12, 15). Having fully considered the written arguments, administrative record, and applicable authority, the Court grants Plaintiff's Motion for Summary Judgment and remands this matter for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff Tanisha Portwine ("Ms. Portwine") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Ms. Portwine filed her application for disability insurance benefits on April 16, 2020, with an alleged onset date of January 1, 2017. (Tr.[1] 15).

In denying Ms. Portwine's social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 15–31). At step one, the ALJ found that Ms. Portwine had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18). At step two, the ALJ found that Ms. Portwine had the following combination of severe impairments: degenerative disc disease

---

[1] Citations to "Tr." throughout the Order refer to the administrative record at DE 7.

of the lumbar spine, impingement of the right shoulder, carpal tunnel syndrome, obesity, migraines, insomnia, depression, anxiety, and attention deficit hyperactivity disorder. (*Id.* at 19). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 24). Before moving to step four, the ALJ found that Ms. Portwine had the residual functional capacity ("RFC") to perform sedentary work as explained below:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can engage in frequent fingering and handling with her bilateral upper extremities, and can frequently reach in all directions with her right upper extremity. She cannot work outdoors, and can tolerate exposure to moderate levels of noise as that term is defined in the DOT. She is limited to tasks requiring no more than occasional changes in work setting or duties. She can occasionally interact with supervisors, co-workers, and the public. She can maintain concentration and persistence at an acceptable pace for 2-hour increments.

(*Id.* at 27). At step four, the ALJ found that Ms. Portwine could not perform past relevant work but could perform jobs that exist in significant numbers in the national economy. (*Id.* at 29–31).

After exhausting her administrative remedies, Ms. Portwine brought the instant action for review of Defendant's decision denying her application for disability insurance benefits. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v.*

*Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.     DISCUSSION OF CLAIM

Plaintiff raises six challenges: (1) the ALJ improperly performed a function-by-function analysis in formulating the RFC, (2) the ALJ misevaluated Plaintiff's mental health symptoms when formulating the RFC, (3) the ALJ misevaluated Plaintiff's subjective complaints, (4) the ALJ misevaluated the medical opinion of a treating psychologist, (5) the ALJ failed to properly consider Plaintiff's VA rating, and (6) the ALJ erred at step five by relying on unsupported and improper

vocational expert ("VE") testimony. Remand is warranted based on Plaintiff's sixth challenge.

Plaintiff argues that the ALJ's step five analysis is not supported by substantial evidence because the ALJ relied on VE testimony regarding the number of jobs available in the national economy that was unreliable, overstated, and improper. At step five, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). "To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ relies primarily on the [DOT]" and may also use a vocational expert. *Id.*

In this case, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's RFC. The VE testified in the affirmative, noting that at least three jobs met those criteria, including a document preparer, microfilming (DOT# 249.587-018) with 22,000 jobs; a grinding-machine operator (DOT# 690.685-194) with 17,000 jobs; and a final assembler (DOT# 713.687-018) with 56,000 jobs. (Tr. 30). After the hearing, Plaintiff objected to the number of jobs identified by the VE, arguing that the VE's testimony on the job numbers was unreliable and unsupported as the VE never cited or referenced her data source for the job numbers and provided estimated job numbers based on position groups rather than a specific position. (*Id.*). The ALJ overruled the objections, explaining that Plaintiff failed to object at the hearing and noting that a VE can provide testimony on jobs that exist in significant numbers in the national economy. (*Id.*).

The first job listed by the VE—the microfilming position—cannot satisfy Defendant's burden to show that a significant number of jobs exist in the national economy. The DOT describes the microfilming position as:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices:

> Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT# 249.587-018. The VE testified that 22,000 microfilming positions exist, however courts routinely find this position outdated and obsolete.[2] While the antiquation of the position alone does not negate the VE's testimony, the fact that the VE failed to disclose her source for the number of microfilming positions coupled with her improper testimony, as explained below, is troubling and precludes a finding of substantial evidence.

Regarding the two remaining positions, the VE found that 17,000 grinding-machine operator positions and 56,000 final assembler positions exist in the national economy. However, the VE again failed to disclose her source. Plaintiff argues these numbers that the VE "cut from whole cloth" are substantially overstated when compared to market data published by Skilltran,

---

[2] *Kelvin W. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-21-921, 2022 WL 847585, at *n.1 (D. Md. Mar. 21, 2022) ("[T]he existence of the document preparer position, which specifically refers to preparing documents for microfilming, appears obsolete. While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. Where a VE is citing a job that likely has been rendered nearly or entirely obsolete by advances in technology since the DOT was last published in 1991, reference to Occupational Information Network ("O*NET") to determine whether or not the position continues to exist might provide additional evidentiary support for an ALJ's conclusions.") (citations omitted); *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 222 (E.D.N.Y. 2021) ("That the technology underlying such a career is rapidly descending into obsolescence can be readily demonstrated: at this writing, a growing number of Americans are unacquainted with 'microfilming,' 'rubber stamps' and perhaps even 'photocopying.' And while microfilm may still service some obscure, niche markets, in the digital economy, its trajectory resembles that of carbon paper and punch cards."); *Corey S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-0678 (ML), 2021 WL 2935917, at *10 (N.D.N.Y. July 13, 2021) (remanding where "an increasing number of courts have recognized the obsolete nature of the document preparer position"); *Kordeck v. Colvin*, No. 2:14-CV-431-JEM, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (stating that the job of microfilm document preparer, DOT 249.587-018, is an example of a job that has been "reduced significantly in number if not rendered obsolete by the rise of the internet").

which is used in two administratively noticed government publications—the "County Business Patterns" and the "Occupational Outlook Handbook." (DE 17 at 8; Tr. 345–50); 20 C.F.R. § 404.1566(d)(2), (5). The market data shows that only 32 grinding-machine operator positions and only 24 final assembler positions exist in the national economy. If these numbers are correct, it is very unlikely that these positions exist in significant numbers. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (holding that 135 jobs regionally or 1,680 jobs nationally is not significant).

In response, Defendant argues that the "underlying data source for Skilltran is at best unclear" and notes that it is well settled that the Commissioner can offer evidence through the testimony of a VE responding to a hypothetical that incorporates Plaintiff's limitations. (DE 16 at n.3 (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)). While it is true VE's can offer evidence and testify based on their expertise, the testimony must be reliable such that it can provide substantial evidence for the ALJ's decision. Here, it is unclear how reliable the VE's testimony was as she did not provide source evidence. And, regarding Defendant's argument that Skilltran is unreliable, Defendant's position seems at odds with its prior position praising Skilltran as an acceptable source.

> On December 28, 2009, the SSA's Director of the Division of Field Procedures issued an internal memorandum to the regional management officers. Memorandum from Susan Swansiger, Dir., Div. of Field Procedures, SSA, to Reg'l Mgmt. Officers (Dec. 28, 2009). In that memorandum, the Director listed Job Browser Pro as an acceptable version of the DOT and stated that the program met the requirements of SSR 00-4p. *Id.* Specifically, the memorandum states that "four acceptable electronic versions of the ... DOT[ ] are currently available at http://ssahost.ba.ssa.gov/digitallibrary" *Id.* Under the second bullet point, the memorandum explained SkillTRAN Job Browser Pro as follows:
>
> This Program provides a searchable copy of the DOT. Users can search by job title, DOT code or keyword(s) within the title, and task description. After selecting an occupation and clicking "Details", users can find all DOT/SCO information on the "Quick View - Codes" button. Through the advanced search, it also allows searches by a variety of other lists, such as GOE or occupational group, all of which can be useful when performing transferability of skills analysis.

> The Director instructed the regional management officers to share her memorandum with all ALJs. *Id.* Moreover, the Agency administratively recognizes the reliability of the following sources of information: the DOT; county business patterns; census reports; occupational analyses; and, the OOH. 20 C.F.R. §§ 404.1566(d), 416.966(d). According to both Plaintiff's post-hearing brief and the VE's testimony, Job Browser Pro collects its job incidence data from these administratively recognized sources. (R. at 82-83, 370.) Thus, by regulation and Agency policy, the VE properly relied on data that she retrieved from Job Browser Pro.

*Collins v. Berryhill*, No. 3:17CV633 (MHL), 2018 WL 4232888, at *11 (E.D. Va. Aug. 20, 2018), *adopted by*, No. 3:17CV633 (MHL), 2018 WL 4224854 (E.D. Va. Sept. 5, 2018). Thus, Defendant's position is at odds with its previous position, and the VE's testimony is at odds with the Skilltran data. While these contradictions alone do not warrant remand, the Court is again unable to evaluate the inconsistency because the VE failed to provide any source evidence. Meaningful review is thus impossible.

Regardless, the VE provided national job numbers for groups of DOT codes rather than for a job-specific DOT code. This alone was legal error and warrants remand. See 20 C.F.R. § 404.1566; *see also Cunningham v. Berryhill*, No. 3:19-CV-00054-RJC, 2020 WL 400638, at *1 (W.D.N.C. Jan. 23, 2020). For example, at the hearing, the VE provided the following testimony:

> **Counsel**: The [job] numbers that you have provided to the ALJ in hypothetical one, are they DOT-specific, or are they from a classification of occupations?
>
> **VE**: They represent a classification of occupations.
>
> **Counsel**: So like an OES statistical group or something of that nature?
>
> **VE**: Yes, that would be the occupations that would fall into that group that would meet the restrictions in the hypothetical. And that varies. Like for the document clerk, there are only two DOTs that fall into that. But certainly for assemblers there are numerous DOTs.

(Tr. 77). The testimony is similar to that in *Cunningham*, where this Court remanded when the "VE used data from the Bureau of Labor Statistics ('BLS') on numbers of jobs for broader

categories than the DOT and did not adjust those numbers to reflect the number of jobs for the specific DOT positions identified by the VE." *Cunningham*, 2020 WL 400638, at *4. In *Cunningham*, the VE provided that following testimony:

> **Q**. And the job numbers that you provided, what source of data are those from?
>
> **A**. Bureau of Labor Statistics.
>
> **Q**. Okay. And Bureau of Labor Statistics provides job numbers for broader categories, not by DOT code, but broader category SOC code or QES code, correct?
>
> **A**. Yes.
>
> . . .
>
> **Q**. Okay. So, are the job numbers are they specific to the DOT code you provided or are they part of that broader category of similar types of jobs?
>
> **A**. They're part of that broader category.

*Id.* Based on the VE's testimony that he provided job estimates based on groups of positions rather than on specific DOT job codes, this Court remanded, explaining:

> [T]his testimony makes clear that he relied on BLS data for broader categories than the specific DOT occupations. Thus, as when a VE relies on data from the OEQ, the VE here should have reduced or otherwise reasonably adjusted the data to reflect the number of jobs for the specific DOT occupations the VE identified. It is entirely unclear whether the VE reduced or adjusted the numbers reported by the BLS and, if so, the methodology used. As a result, the VE's testimony does not constitute substantial evidence to support the ALJ's step-five determination.

*Id.* (citations omitted). Other courts have found similarly.[3]

---

[3] *See Vandermark v. Colvin*, No. 3:13-cv-1467, 2015 WL 1097391, at *16 (N.D.N.Y. Mar. 11, 2015) ("Courts balk . . . when [VEs] provide incidence testimony based on broad occupation groupings without accounting for the fact that such groupings include more jobs tha[n] a particular claimant can perform, without adjusting those incidence numbers accordingly or when they otherwise inject meaningful uncertainty as to how adjustments are made."); *Boston v. Colvin*, No. 4:14-cv-206-D, 2016 WL 721563, at *13 (E.D.N.C. Feb. 1, 2016), *adopted by* 2016 WL 738762 (E.D.N.C. Feb. 23, 2016) (concluding that the VE's testimony did not constitute substantial evidence to support the ALJ's step-five determination where the VE "made no attempt to reduce the total number of jobs in the broader Census categories to reflect the number of jobs in the specific DOT occupations she identified"); *Saffioti v. Comm'r of Soc. Sec.*, No. 2:17-cv-143-FtM-99CM, 2019 WL 298473, at *10 (M.D. Fla. Jan. 7, 2019) (concluding that the VE's testimony did not constitute substantial evidence to support the ALJ's step-five determination where it was unclear whether the VE

Here, like in *Cunningham*, the VE relied on broad categories rather than on specific DOT jobs and failed to reduce the total number of jobs accordingly or identify her methodology for doing so. Moreover, the VE here also failed to provide source evidence for her job estimates and provided jobs that are obsolete or questionable in terms of the national economy. Accordingly, the ALJ's step five determination lacks substantial evidence.

By ordering remand, the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson*, 846 F.3d at 663. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 12), is **GRANTED**;
2. Defendant's Motion for Summary Judgment, (DE 15), is **DENIED**; and
3. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

The Clerk is directed to close this case.

**SO ORDERED.**

---

appropriately reduced the job numbers taken from the BLS), *adopted by* 2019 WL 1513354 (M.D. Fla. Apr. 8, 2019); *Gracz v. Berryhill*, No. 16-cv-4099, 2017 WL 1344532, at *5 (N.D. Ill. Apr. 12, 2017) (concluding that the ALJ's step-five determination lacked sufficient evidentiary support where the record was devoid as to the VE's methodology for reducing the job numbers taken from the BLS).

Signed: August 31, 2022

*[signature]*

Robert J. Conrad, Jr.
United States District Judge